| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | COURT USE ONLY |
| **Plaintiff(s):**   EXTRACTION OIL AND GAS, INC.<br><br>**Defendant(s):**   COLTER ENERGY SERVICES USA, INC., | |
| Tamir Goldstein, #32413<br>Dana Svendsen, #38545<br>Sherman & Howard L.L.C.<br>633 17th Street, # 3000<br>Denver, CO  80202<br>Phone:  303 297-2900<br>Fax:  303 298-0940<br>tgoldstein@shermanhoward.com<br>dsvendsen@shermanhoward.com | Case Number:<br><br><br>Div./Ctrm.: |
| **COMPLAINT** | |

Plaintiff Extraction Oil & Gas, Inc. ("Plaintiff" or "Extraction"), by its attorneys, Sherman & Howard L.L.C., alleges as follows for its Complaint against Defendant Colter Energy Services USA, Inc. ("Colter"):

## JURISDICTION AND VENUE

1. Extraction is a Delaware corporation, licensed to do business in Colorado, with its principal place of business in Colorado, with its office located at 370 17th Street, Suite 5300, Denver, CO 80202.

2. Defendant Colter is a Nevada corporation, licensed to do business in Colorado, with an office located at 15779 Tanya Street, Sterling, CO 80751.

3. Venue is proper in the City and County of Denver under C.R.C.P. 98 because all parties are residents of Colorado, and the parties' contract provides that venue shall be in the City and County of Denver.

51018435.1

4. This Court has jurisdiction over this action pursuant to C.R.S. § 13-1-124 because this action arises from a transaction of business within this state.

## GENERAL ALLEGATIONS

5. Extraction is an oil and gas exploration company with operations in various locations throughout Colorado.

6. Extraction hires specialty contractors to complete the oil well drilling and completion process. Colter was one such specialty contactor.

7. Colter is a large oil and gas service contractor with significant operations throughout Colorado and the U.S. Colter represents itself as "specializ[ing] in providing flow back" and having "an industry leading integrated Health, Safety and Environmental program."

8. As to safety specifically, Colter's website represents that:

   a. It "will conduct its activities in a manner that safeguards its employees, clients, sub-contractors, visitors and the public."

   b. "The company's management team provides and maintains a safe working environment with proper policies, procedures, training, equipment and emergency response procedures in accordance with all company standards and applicable government regulations."

   c. "All employees and others on company and clientele worksites are responsible for following government regulations, safety rules, procedures, wearing and using proper personal protective equipment, participating in training programs, reporting incidents and informing management of unsafe work conditions."

   d. "As a leading oilfield service company, Colter Energy employs highly trained and experienced personnel to ensure the best interests and safety of our customers, employees and the public are always protected."

9. Extraction hired Colter pursuant to a Master Service Agreement dated June 26, 2017 (the "Contract").

10. Among other safety requirements, the Contract provides:

   a. Colter "is capable of and shall perform the Work safely and efficiently with due diligence…in strict conformity with the best standard of practice."

   b. Colter "shall take, and cause [Colter]'s employees, agents, licensees, and permittees to take all necessary precautions (including those required by [Colter]'s safety regulations) to protect the premises and all persons and property thereon from damage and injury."

2

  c. Colter has "the sole authority and right to direct, supervise and control the performance of all the details of the Work."

  d. "**COMPLIANCE WITH LAWS AND SAFETY AND ENVIRONMENTAL POLICIES**. Contractor … covenants, represents and warrants that the Work and all related activities carried out by Contractor… shall be in strict compliance with all applicable laws, including statutes, regulations, rules, ordinances, orders and codes…"

11. As to safety, Colter also certified it would:

  a. "[C]onduct its operations in a manner that protects the safety and health of its and Company's employees and the public…"

  b. "Advise and train its supervisors in safety…and hold each accountable for compliance…"

  c. "Provide its employees with adequate training and education in safety…and hold each employee accountable for compliance…"

  d. "Comply with all applicable safety, health and environmental laws and regulations."

  e. "Encourage its employees to communicate their concerns to management about any unresolved safety, health and environmental risks they might have identified."

  f. "Conduct safety and environmental reviews of Contractor's operations in order to evaluate its compliance with all applicable safety, health and environmental laws and regulations."

12. Under these unambiguous Colter terms, Colter was responsible for the safe operation of its work.

13. Colter breached these obligations.

14. Extraction is the operator of the Stromberger 22-E Pad location, located in Weld County, Colorado ("Stromberger Facility").

15. Pursuant to the Contract, Extraction hired Colter to perform flow back operations at the Stromberger Facility.

16. On the evening of December 22, 2017, a fire occurred while Colter was performing flow back activities at the Stromberger Facility. The fire resulted in injuries to one onsite Colter employee, who was subsequently transferred, treated and released from a local hospital.

3

17. The fire caused damage to tanks, separation equipment, and some wellhead equipment, and led to a minor fluid release. Extraction and several local fire districts quickly responded, putting out the tank fire by approximately 2:00 a.m. on December 23, 2018. The wellhead equipment fire was suppressed and the damaged wellhead repaired by 2:00 p.m. that same day. Extraction and the local fire departments contained the fire and its impacts to the pad itself and runoff from firefighting activities, suppressant foam, and fluid leaks did not leave the Stromberger Facility at any time.

18. Colter caused the fire by its improper and unauthorized operation of a generator in the area of the flowback operations. The generator ignited natural gas vapor in the area near the flowback tanks. The separators used by Colter require some power source for lighting. There were numerous power sources available to Colter, including light posts and generators. It was Colter's responsibility to ensure that any power source was properly located and operated to ensure the safety of the Stromberger Facility.

19. Colter's placement and operation of the generator was in direct contravention to clearly legible signage placed at the entry of the flowback area that stated "DANGER NO IGNITION SOURCES BEYOND THIS POINT."

20. Colter placement and use of the generator violated Extraction's policies and instructions, as well as Colter's own policies.

21. Among other applicable laws and regulations, Colter's operations are governed by Occupational Safety and Health Administration (OSHA) rules and regulations, as well as rules and regulations promulgated by the Colorado Oil and Gas Conservation Commission (COGCC).

22. Colter's actions violated OSHA and COGCC rules and regulations.

23. On August 27, 2018, OSHA, issued a citation to Colter for a violation of OSHA regulations governing flammable liquids, and entered a settlement with the Colter in exchange for payment of a fine. In contrast, OSHA closed its investigation of Extraction without issuing any citations to Extraction.

24. On August 17, 2018, the COGCC issued a Notice of Alleged Violation ("NOAV") to Extraction for Colter's violation of COGCC Rule 606A.h., Fire Prevention and Protection, for failing to keep a source of ignition a safe distance away from flammable liquids storage areas.

25. In response to the NOAV, Extraction had to make significant operational concessions to the COGCC at significant cost, none of which would have been necessary but for Colter's breaches.

26. The NOAV resulted in an Administrative Order on Consent, which included fines and penalties. In addition, the negative impact caused to Extraction's regulatory relationship

with the COGCC and municipal entities is immeasurable.  Extraction's reputation has been severely damaged.

27.     The Contract provides:

a.      Colter "agrees to indemnify [Extraction] … from and against any loss, damage, or liability directly or indirectly resulting from any breach of the covenants, representations and warranties…"

b.      Colter "SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY… AGAINST ANY LOSS, LIABILITY OR DAMAGE INCIDENT TO CLAIMS, DEMANDS OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER WHATSOEVER…RELATED TO OR ARISING IN CONNECTION WITH BODILY INJURY, ILLNESS, DEATH, DAMAGE TO OR LOSS OF PROPERTY OF CONTRACTOR, CONTRACTOR'S EMPLOYEES, CONTRACTOR'S CONTRACTORS OR THEIR EMPLOYEES…ARISING OUT OF OR RESULTING FROM THE PERFORMANCE OF (OR THE FAILURE TO PERFORM UNDER) THIS AGREEMENT…"

c.      Colter "SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY CLAIM SUFFERED BY A THIRD PARTY, TO THE EXTENT AND PROPORTION SUCH CLAIM ARISES OUT OF OR RESULTS FROM THE NEGLIGENCE…STRICT LIABILITY, WILLFUL OR WANTON MISCONDUCT, BREACH OF CONTRACT, AND/OR FAULT (IF ANY) OF ANY MEMBER OF THE CONTRACTOR GROUP, OR CONTRACTOR'S INVITEES."

28.     Colter also breached these obligations.

29.     Extraction has repeatedly requested Colter reimburse Extraction for the losses and damages it has suffered, as specifically provided for and required by the Contract, but Colter has obstinately refused in violation of its obligations under the Contract.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

30.     Extraction incorporates by reference the above paragraphs.

31.     Extraction contracted with Colter for the performance and management of flow back operations at the Stromberger Facility.

32.     The Contract is valid and enforceable.

5

33. As more specifically provided for in the Contract, Colter was responsible for directing, supervising and controlling the performance of the flow back operations in a safe manner and in compliance with all policies, rules and regulations.

34. As more specifically provided for in the Contract, Colter is obligated to indemnify, protect, and hold Extraction harmless from any and all losses and damages of any type related to Colter's performance of the flow back operations.

35. Colter breached its obligations under the Contract.

36. Extraction has performed all of its obligations under the Contract or is legally excused from such performance.

37. As a direct and proximate result of Colter's breaches, Extraction has suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

Extraction specifically requests that judgment be entered as follows:

    a. Judgment against Colter for their breach of contract and an award of damages to Extraction in an amount to be proven at trial;

    b. Judgment for court costs, attorney's fees, expert witness fees, and interest pursuant to statute, and/or the Contract; and

    c. For such other and further relief as the Court deems proper.

## **JURY DEMAND**

Extraction demands a trial by jury on all issues so triable.

Dated: January 21, 2019.

SHERMAN & HOWARD L.L.C.

By: *s/ Tamir Goldstein*
    Tamir Goldstein, #32413
    Dana Svendsen, #38545
    633 Seventeenth Street, Suite 3000
    Denver, Colorado 80202
    (303) 297-2900

Attorneys for Plaintiff Extraction Oil & Gas, Inc.

<u>Address of Plaintiff</u>:
370 17th Street, Suite 5300
Denver, CO 80202